FILED
VANESSA L. ARMSTRONG

JUL 07 2016

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
## WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| | ) Case No. 1:16-MJ-50 |
| MIRSAD RAMIC | ) |
| *Defendant* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state the following is true to the best of my knowledge and belief.

On or about June 2014 to continuing to September 2015, in Warren County in the Western District of Kentucky, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2339B | Providing and Attempting and Conspiring to Provide Material Support and Resources to a Designated Foreign Terrorist Organization |
| 18 U.S.C. 2339D | Receiving Military-Type Training From a Designated Foreign Terrorist Organization |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet: See Attached Affidavit for Criminal Complaint

_____
*Complainant's signature*

WILLIAM B. KURTZ, SPECIAL AGENT FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/7/2016

_____
*Judge's Signature*

City and State: Louisville, Kentucky

COLIN H. LINDSAY, U.S. MAGISTRATE
*Printed Name and Title*

JDJ

# AFFIDAVIT IN SUPPORT OF
# CRIMINAL COMPLAINT

I, William B. Kurtz, being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request search and arrest warrants. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since June 2014. I received training in counterterrorism investigations at the FBI Academy, located in Quantico, Virginia. Prior to becoming a Special Agent, I served for over five years as an FBI Intelligence Analyst in the Counterterrorism Division of FBI Headquarters. During this time I provided intelligence support to numerous counterterrorism investigations including cases involving individuals who traveled overseas to join foreign terrorist organizations. I have been involved in the execution of search warrants. Through my training, education, and experience, I have become familiar with criminal activity and the criminal justice system. I am authorized to investigate violations of the laws of the United States (including those related to terrorism offenses), and to execute warrants issued under the authority of the United States.

2.      I make this affidavit in support of a criminal complaint and arrest warrant for **MIRSAD RAMIC**. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2339B (Providing and Attempting and Conspiring to Provide Material Support and Resources to a Designated Foreign Terrorist Organization) and 2339D (Receiving Military-Type Training From a Designated Foreign Terrorist Organization), have been committed by **MIRSAD RAMIC**.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

## II. SUMMARY OF PROBABLE CAUSE

4. On June 3, 2014, RAMIC and his two associates, Co-Conspirator 1 (CC-1), and Co-Conspirator 2 (CC-2) each boarded flights departing Nashville, Tennessee, for Istanbul, Turkey. RAMIC traveled on a flight through Houston, Texas, while CC-1 and CC-2 traveled together on a flight through Dulles Airport. Upon arrival in Istanbul, all three purchased one-way tickets with cash on the same flight from Istanbul to Gaziantep, Turkey, a city located near the border with Syria. As set forth in detail below, the FBI believes the three men crossed the border into Syria and subsequently joined the Islamic State in Iraq and the Levant ("ISIL"), a designated foreign terrorist organization.

5. On October 15, 2004, The United States Secretary of State designated al Qa'ida in Iraq (AQI), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224. On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq ("AQI") as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. Although the

group has never called itself "Al-Qaeda in Iraq (AQI)" this name has frequently been used to describe it through its history. To date, ISIL remains a designated FTO. In an audio recording publicly released on June 9, 2014, ISIS announced a formal change of ISIS's name to Islamic State ("IS").

6. As more fully discussed below, the FBI's investigation to-date reveals the following:

   a. RAMIC, CC-1, and CC-2 all left the United States on June 3, 2014;

   b. RAMIC, CC-1, and CC-2 all routed their travel through Istanbul, Turkey, and they all failed to take the last leg of their ticketed flights to destinations outside Turkey;

   c. RAMIC, CC-1, and CC-2 all paid cash for one way tickets and traveled together on the same flight from Istanbul to Gaziantep, Turkey, located near the border with Syria;

   d. RAMIC, CC-1, and CC-2 communicated via email after crossing in to Syria. Their communications reference their locations in Syria and Iraq, in cities controlled by ISIL. Their communications also reference jihad, and the death of CC-2 in battle in early 2015 and his being considered a martyr;

   e. CC-1 used his email account to send two separate e-mails to Western Kentucky University, after leaving the United States, advising, in sum and substance, that he had traveled to Syria to join ISIL, as well as his desire that ISIL will someday conquer the United States.

   f. An FBI Cooperating Witness ("CW") has identified RAMIC as someone the CW met while in an ISIL training camp in Syria in 2014. The CW has provided

3

information which accurately describes RAMIC. The CW has further provided information concerning the weapons training that was provided at that ISIL camp; and

g. The FBI has obtained a photograph of RAMIC wearing camouflage clothing and standing in front of a pickup truck outfitted with an anti-aircraft gun and the ISIL flag. A second photograph of RAMIC depicts him sitting and holding a rifle. Both photographs were shown to RAMIC's mother who positively identified her son, RAMIC.

7. The FBI believes RAMIC, aka Abu Hazim al Bosnawi, aka Ahmet Sinay, is currently incarcerated in Turkey on pending Turkish terrorism –related charges. CC-1 may still be fighting for ISIL. CC-2 was allegedly killed in battle in or about February or March 2015.

### III. PROBABLE CAUSE

8. RAMIC, age 26, is a national of Bosnia and a naturalized United States citizen. He was born in Bosnia and through the refugee program came to the United States with his mother and sister when he was approximately 10 years old. He became a naturalized U.S. citizen on September 17, 2009. He lived with his mother and sister in Bowling Green, Kentucky, after his arrival in the United States. As set forth below, he left Kentucky in June 2014 to travel to Syria to join ISIL. Although Ramic was not a student at Western Kentucky University, various civilian witnesses have told the FBI that they often saw Ramic socializing with CC-1 and CC-2. CC-1 and CC-2 are Saudi nationals who came to the U.S. on student visas and both attended Western Kentucky University in Bowling Green, Kentucky.

9. Flight manifests obtained by the FBI show that RAMIC departed from Nashville, Tennessee, on June 3, 2014 on a flight to Houston, Texas, and then to Istanbul, Turkey. CC-1

4

and CC-2 flew together on a different flight on the same day, June 3, 2014, from Nashville to Dulles Airport and then to Istanbul, Turkey. All three met in Istanbul and purchased one-way tickets with cash on the same flight to Gaziantep, Turkey. Gaziantep is located near the border with Syria. Significantly, the original flight tickets for all three individuals were flights to third countries with only a stopover in Istanbul. RAMIC's final ticketed destination was Sarajevo, Bosnia, while CC-1 and CC-2 each had a ticketed final destination of Riyadh, Saudi Arabia. The airlines confirmed that each of the three did not use their final leg departing Istanbul. This method is commonly used by aspiring ISIL fighters as a means to hide their travel and intentions.

10. Based on training and experience, I know many foreign fighters enter Syria through Turkey because of its geographic proximity to the Syrian border areas where violent extremist groups operate. Many would-be fighters simply take direct or indirect commercial flights to Turkish airports before crossing into Syria.

11. After traveling to Syria, RAMIC remained in contact with CC-1 via email. Emails from RAMIC's email account, XXXX@hotmail.com, and CC-1's email account, XXXX@hotmail.com, have been obtained pursuant to court authorization.[1] The sum and substance of a portion of the emails is set forth below.

12. On July 30, 2014, in an email, CC-1 and RAMIC discussed how RAMIC used a dushka anti-aircraft weapon to shoot at planes. On July 30, 2014, in an email, RAMIC told CC-1 that he is in "Raqqah" Syria.

---

[1] The specific email accounts are known to your affiant but not set forth herein.

13. On September 27, 2014, in an email, CC-2 told CC-1 that he was in "Alanbar, Ramadi province (Iraq)." On October 6, 2014, in an email, CC-2 told CC-1 that "Paradise and the virgins long for you."

14. On November 15, 2014, in an email, CC-2 told RAMIC, "Praise be to Allah, I thought you were dead. I'm in the city of Ramadi in the province of Al-Anbar (Iraq)."

15. On December 6, 2014, in an email, RAMIC told CC-1 that he is in Kobane (Syria) and that today he got his vacation for 2 days. On December 6, 2014, in an email, RAMIC told CC-1 that he put CC-1 in his will so that CC-1 would get his belongings if RAMIC was killed during jihad.

16. On December 7, 2014, in an email, CC-1 told RAMIC that as soon as CC-2 meets him in Shadadi (city in Syria) they plan to go and meet RAMIC.

17. On February 13, 2015, in an email, CC-2 told RAMIC that he was in Mosul (Iraq).

18. On March 1, 2015, RAMIC received a message from CC-1 advising that CC-2 was missing and is being considered a martyr. On March 14, 2015, in an email, CC-1 stated that CC-2 went to fight jihad and was killed by the crusader's plane. On March 14, 2015, in an email, CC-1 stated that CC-2 was killed in Tal Hamis, Syria, and that he was supposedly deterring an attack by the PKK.[2]

19. In addition to these communications, CC-1 also communicated with Western Kentucky University (WKU) on two occasions after leaving the United States. The FBI obtained these emails from WKU officials. CC-1 was in the U.S. on a student

---

[2] PKK is a reference to "Partiya Karkeren Kurdistani," also known as the Kurdistan Worker's Party, which is the primary Kurdish militia group fighting ISIL in or near Kobane, Syria.

visa and had been studying at WKU prior to his June 2014 flight to Turkey. On September 18, 2014, CC-1 sent an email to WKU from his email account, XXXX@hotmail.com, which read in relevant part: [t]hree months ago I came to factually believe that Islamic state in Iraq and Levant I.S.I.L is the true way. They follow the footsteps of the prophet and take Qur'an as Imam. Alhamdulilah [praise to God] i found my way to the land of al sham [Syria]; now I live under the caliphate[.]

20. Almost a year after his departure, on June 8, 2015, CC-1 sent another e-mail from XXXX@hotmail.com to WKU stating "I am with islamic state. In sha Allah [God willing] when we conquer the US I will look for you." WKU officials confirmed that the email address is associated to CC-1's student account.

21. The FBI has obtained a photograph of RAMIC dressed in camouflage and standing in front of a pickup truck outfitted with an anti-aircraft gun and an ISIL flag. Arabic writing on the hood of the vehicle, though not definitively legible, appears to be the popular ISIL slogan "A Caliphate based on the Prophetic Tradition." The photo is believed to have been taken while RAMIC was in Syria. In a January 11, 2016, interview with the FBI, RAMIC's mother admitted that she had received the same photo from RAMIC after he had left the United States. She identified the individual in the photo as her son. During the same interview, RAMIC's mother provided the FBI with an additional photo she had received from RAMIC after he had left the United States. The second photo depicts RAMIC seated on the ground, wearing a typical jihadi head covering and holding a rifle.

22. An FBI Cooperating Witness ("CW") has provided information concerning RAMIC. The CW's information has been corroborated by the FBI. Information provided in unrelated matters has also been corroborated and assessed as credible. The CW previously

traveled to Syria and joined ISIL. After leaving Syria, the CW contacted the U.S. Government and has since provided information in this case and other matters. The CW has pleaded guilty to two charges: one count of providing material support to a foreign terrorist organization (FTO) (ISIL), in violation of 18 U.S.C. Section 2339B, and one count of receiving military-type training from an FTO (ISIL), in violation of 18 U.S.C. Section 2339D. The CW has not yet been sentenced. The CW's cooperation is in exchange for the possibility of receiving a reduced sentence on those charges.

23. While in an ISIL training camp in Syria, the CW met an individual known as "Abu Hazim al Bosnawi." The term "al Bosnawi" means the Bosnian. The CW described this individual, believed to be RAMIC, as a Bosnian, approximately 5'8" tall and approximately 26 years old. The CW stated that Abu Hazim told the CW that he has a criminal record and the CW remembered it was in Kentucky or somewhere else in "the Bible belt." The CW also was told by Abu Hazim that he knows the FBI has a case on him regarding jihadi activities, and that he previously attempted to travel to Yemen but was kicked out and returned to the United States. The CW stated that Abu Hazim likely arrived in Syria one month prior to CW's arrival. The CW also stated that Abu Hazim had multiple tattoos on both arms. The CW's descriptions of Abu Hazim accurately describe RAMIC. RAMIC, a Bosnian national, was born January 10, 1990, and is currently 26 years old. He has several prior arrests in Kentucky for low level crimes. Furthermore, RAMIC attempted to travel to Yemen in 2010 but was denied entry because he did not possess the proper visa. RAMIC also has a large distinctive tattoo on his left forearm. Finally, RAMIC's mother, during a January 2016 interview with the FBI, admitted that RAMIC uses "Abu Hazim" for one of his online accounts. The CW has also identified several photographs of RAMIC.

8

24. The CW first met Abu Hazim (RAMIC) at Camp Abdullah Aazzam, an ISIL military training camp near Taqba, Syria. Abu Hazim (RAMIC) was in the "kadeemi group," the group ahead of the CW's group. They were together in the same camp for approximately a couple of weeks—probably from mid to late July 2014. The CW recalls 1 or 2 direct conversations they had while at the camp together. The conversations were in English and the first occurred at night during tea when Abu Hazim (RAMIC) told the CW about himself. This conversation lasted approximately 30 minutes.

25. The CW further advised that everyone at Camp Abdullah Aazzam received military training from ISIL. The training included: weapons training and physical training. The CW stated that every trainee at the camp fired an AK-47.

## IV. CONCLUSION

26. Based on the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2339B (Providing and Attempting and Conspiring to Provide Material Support and Resources to a Designated Foreign Terrorist Organization) and 2339D (Receiving Military-Type Training From a Designated Foreign Terrorist Organization), have been committed by **MIRSAD RAMIC**. Therefore, the affiant respectfully requests a criminal complaint and arrest warrant for **MIRSAD RAMIC** for the aforementioned crimes.

## V. REQUEST FOR SEALING

27. The government respectfully moves for the complaint and arrest warrant to remain sealed—with the exception that the complaint and arrest warrant are unsealed for the limited purpose of disclosing the evidence of or disseminating the complaint and/or arrest warrant to relevant United States, foreign, or intergovernmental authorities, at the discretion of

the United States and in connection with efforts to prosecute the defendant or to secure the defendant's arrest, extradition or expulsion, or as otherwise required for purposes of national security.

Respectfully submitted,

WILLIAM KURTZ
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on 7/7 , 2016

COLIN H. LINDSAY
UNITED STATES MAGISTRATE JUDGE

10