**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT BOWLING GREEN**
**(Filed Electronically)**

**CRIMINAL ACTION NO.1:21CR-13-GNS**
**UNITED STATES OF AMERICA,**                                                               **PLAINTIFF,**

**v.**

**MIRSAD RAMIC,**                                                                                          **DEFENDANT.**

## MOTION TO DISMISS ON GROUNDS OF ILLEGAL RENDITION

Comes the defendant, by counsel at the express direction of defendant, and moves the Court for an order dismissing the indictment herein and directing the United States to return him to Turkey for proper deportation and/or extradition in accord with international law, the laws of Turkey, and the extradition treaty between the United States and Turkey. As grounds for said motion, it is defendant's position that he was forcibly kidnapped by the United States from Turkey in contravention of said treaty and international law and illegally brought within the jurisdiction of the United States for purposes of this criminal prosecution. Accordingly, the Court should decline jurisdiction over defendant. United States v. Rauscher, 119 U.S. 407, 425 (1886); Ford v. United States, 273 U.S. 593 (1927); Cook v. United States, 288 U.S. 102 (1933). *Contra*, United States v. Alvarez-Machain, 504 U.S. 655 (1992). It is also the contention of the defendant that said kidnapping and rendition constituted a violation of the Due Process Clause of the Fifth Amendment.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

**Facts**

Defendant is charged with Providing Material Support to a Designated Foreign Terrorist Organization in violation of 18 U.S.C. 2339B(a)(1), 18 U.S.C. §§2339B(d)(1)©, 18 U.S.C. 2339B(d)(1)(E), and 18 U.S.C. 2339B(d)(1)(F); Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization in violation of 18 U.S.C. §§2339B(a)(1), 18 U.S.C. 2339B(d)(1)©, 18 U.S.C. 2339B(d)(1)(E), and 18 U.S.C. 2339B(d)(1)(F); and Receiving Military-Type Training from a Designated Foreign Terrorist Organization in violation of 18 U.S.C. §§2339D(a), 18 U.S.C. 2339D(b)(1), 18 U.S.C. 2339D(b)(3), 18 U.S.C. 2339D(b)(5), 18 U.S.C. 2339D(b)(6), and 18 U.S.C. 3238.

The government alleges that in 2014, defendant crossed from Turkey into Syria where he allegedly joined the Islamic State in Iraq and the Levant [hereinafter referred to as "ISIL"] and received military-style training from it. Defendant abandoned ISIL and Syria in 2015, returning to Turkey on September 6, 2015, where he was arrested by Turkish authorities in Kilis, Turkey. He was charged by Turkey with membership and participation in the activities of ISIL while in Syria—effectively the same offense conduct alleged herein. He was convicted in a Turkish court in Kilis (Kilis Agir Ceza Mahkemesi #1525/2015) and sentenced to and imprisoned for approximately five years in Kirkkale Prison in Turkey. On July 7, 2016, while he was serving his sentence in Turkey for being a member of and participating in the activities of ISIL, he was charged in the complaint herein with essentially the same offense conduct—providing, attempting to provide, and conspiring to provide material support to ISIL by joining the organization and receiving military-type

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

2

training from it while a member. (DN 1 Criminal Complaint). Upon technical release by Turkey on its terrorism charges in or about July, 2020, defendant remained imprisoned in Turkish immigration custody until his re-arrest and detention in or about March, 2021, for immigration violations. On May 11, 2021, he was indicted in this case (DN 7) for providing and conspiring to provide material support for ISIL by joining the organization and receiving military-type training from it while a member—again, the exact same conduct for which he was arrested, tried, convicted, and imprisoned in Turkey.

The United States made a request for extradition of the defendant pursuant to the extradition treaty between it and Turkey. <u>Treaty on Extradition and Mutual Assistance in Criminal Matters Between the United States of America and the Republic of Turkey</u>, 32 U.S.T. 3111, T.I.A.S. No. 9891, 1981 WL 375754 [hereinafter referred to as the "Extradition Treaty"]. For reasons unstated and unknown, the government of Turkey did not grant or even respond to the request of the United States to initiate extradition procedures in accord with the extradition treaty. Although not specifically invoked by Turkey to justify or explain its failure to grant the extradition request of the United States—indeed, no reason or reasons were ever given to counsel's knowledge—the extradition treaty does provide, *inter alia*, that Turkey may refuse extradition "[i]f the person whose surrender is sought is being prosecuted in the Requested Party for the same offense". Extradition Treaty, Article 3 (2)(a). *And, indeed, this was the case.*

Whatever the reason for Turkey not granting the extradition request of the United States, defendant remained imprisoned by Turkish authorities; and no extradition

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

3

proceedings were held as required by the extradition treaty. Defendant asserts that instead of proper extradition, FBI agents—perhaps frustrated by Turkey's refusal to grant the extradition request of the United States—took it upon themselves in or about December, 2021, to go to the prison in Turkey where defendant was incarcerated, forcibly take him into their custody, put him on an airplane, and rendition him directly to Kentucky, where he had his initial appearance on these charges in this district on December 20, 2021. (DN 17). He has been in United States custody ever since.

## Argument

The extradition treaty between the United States and Turkey is the exclusive means by which the United States can legally obtain jurisdiction over a defendant found within the territorial jurisdiction of Turkey. 32 U.S.T. 3111, T.I.A.S. No. 9891, 1981 WL 375754. Turkey having, for whatever reason, declined to extradite the defendant to the United States, the forcible kidnapping of defendant by the United States from Turkey and his rendition to the United States for criminal prosecution was in contravention of international law and said valid and binding extradition treaty between the countries. Accordingly, said rendition to the United States for purposes of criminal prosecution was illegal, and the Court must decline personal jurisdiction over him and return him to Turkey for proper deportation and/or extradition in accord with international law, the laws of Turkey, and the extradition treaty between the United States and Turkey. United States v. Rauscher, 119 U.S. 407, 425 (1886); Ford v. United States, 273 U.S. 593 (1927); Cook v. United States, 288 U.S. 102 (1933). *Contra,* United States v. Alvarez-Machain, 504 U.S. 655 (1992).

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

4

As conceded above, counsel is not unmindful of the opinion in United States v. Alvarez-Machain, 504 U.S. 655 (1992), which distinguishes Rauscher, Ford, and Cook and holds that forcible abduction of a defendant from a foreign country contrary to international law, against the law of the country in which defendant was residing, and outside the procedures of a valid and binding extradition treaty—while "shocking" and "in violation of general international law principles"[1]—does not deprive United States courts of criminal jurisdiction over the kidnapped defendant. However, Mr. Ramic argues and urges this Court to find that Alvarez-Machain was wrongly decided and that the dissent by Justice Stevens, in which Justices Blackmun and O'Connor joined, is the better reasoned take on the issue. United States v. Alvarez-Machain, 504 U.S. 655, 670 (1992) (Stevens, J. dissenting).[2] Justice Stevens correctly characterized the Court's decision in Alvarez-Machain as "monstrous"[3] both in terms of treaty interpretation[4] and a misreading of precedent.[5] His conclusion is that extradition treaties, such as the treaty at issue herein, are the exclusive means by which the United States can legally obtain jurisdiction over a defendant found

---

[1] United States v. Alvarez-Machain, 504 U.S. 655, 656 (1992).

[2] The instant motion complies with FRCP 11 in that it is a "non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law". Given the disdain for *stare decisis* shown by the current Supreme Court, Alvarez-Machain may fare no better on appeal than did Roe v. Wade; and the dissenters may yet carry the day, as have the dissenters in Roe.

[3] Id. at 687.

[4] Id. at 671-677.

[5] Id. at 675-683.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

within the territorial jurisdiction of another country and preclude kidnapping and forcible rendition such as occurred in Mr. Ramic's case.

> The Government's claim that the Treaty[6] is not exclusive, but permits forcible governmental kidnapping, would transform these, and other, provisions into little more than verbiage. For example, provisions requiring "sufficient" evidence to grant extradition (Art. 3)[7], withholding extradition for political or military offenses (Art. 5)[8], withholding extradition when the person sought has already been tried (Art. 6)[9], withholding extradition when the statute of limitations for the crime has lapsed (Art. 7)[10], and granting the requested Country discretion to refuse to extradite an individual who would face the death penalty in the requesting country (Art. 8)[11], would serve little purpose if the requesting country could simply kidnap the person. As the Court of Appeals for the Ninth Circuit recognized in a related case, "[e]ach of these provisions would be utterly frustrated if a kidnapping were held to be a permissible course of governmental conduct." *United States v. Verdugo–Urquidez,* 939 F.2d 1341, 1349 (1991). In addition, all of these provisions "only make sense if they are understood as *requiring* each treaty signatory to comply with those procedures whenever it wishes to obtain jurisdiction over an individual who is located in another treaty nation." *Id.,* at 1351.

United States v. Alvarez-Machain, 504 U.S. 655, 673-74 (1992) (Stevens, J. dissenting).

---

[6] The extradition treaty at issue in Alvarez-Machain was between the United States and Mexico, but, in large part, the provisions of that treaty cited by Justice Stevens are analogous to provisions in the extradition treaty with Turkey at issue herein.

[7] Analogous to Articles 7 and 8 in the extradition treaty between the United States and Turkey.

[8] Analogous to Article 3(1)(a) and 3(1)(b) in the extradition treaty between the United States and Turkey.

[9] Analogous to Article 3(1)(d) in the extradition treaty between the United States and Turkey.

[10] Analogous to Article 3(1)(c) in the extradition treaty between the United States and Turkey.

[11] No analogous provision in the extradition treaty between the United States and Turkey.

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

## Conclusion

<u>Alvarez-Machain</u> notwithstanding, it is the position of defendant that the extradition treaty between the United States and Turkey is the exclusive means by which the United States could legally obtain jurisdiction over him in this case. The forcible kidnapping of him by the United States from Turkey and his rendition to the United States for criminal prosecution was in violation of said treaty, international law, and the Due Process Clause of the Fifth Amendment. Accordingly, the Court must decline personal jurisdiction over him and return him to Turkey for proper deportation and/or extradition in accord with international law, the laws of Turkey, and the extradition treaty between the United States and Turkey.

/s/ Scott T. Wendelsdorf
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525

Counsel for Defendant.

## **CERTIFICATE**

I hereby certify that on May 25, 2023, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Scott T. Wendelsdorf

Office of the
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, KY 40202

Tel (502) 584-0525
Fax (502) 584-2808

7