UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:21-CR-00013-GNS-HBB

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.

MIRSAD RAMIC                                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motions in Limine (DN 191, 193, 224),

Plaintiff's Motion for Leave to Seal (DN 194), Defendants' Motions in Limine (DN 218, 219),

Defendant's Motion to Dismiss (DN 223).  The motions are ripe for adjudication.

### A.     United States' Motion in Limine – Judicial Notice (DN 191)

The United States moves in limine for the Court to take judicial notice pursuant to 44

U.S.C. § 1507 and Fed. R. Evid. 201 that ISIS has been and is currently designated as a foreign

terrorist organization.  (Pl.'s Mot. Lim. 2, DN 191).  In particular, the United States asserts:

- On October 15, 2004, the U.S. Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.  *See* 69 Fed. Reg. 61292 (October 15, 2014) [sic].
- On May 15, 2014, the Secretary of State amended the designation of AQI as an FTO to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name.  *See* 79 Fed. Reg. 27972 (May 15, 2014).  The Secretary also added the following aliases to the ISIL listing:  the Islamic State of Iraq and al-Sham ("ISIS"—which is how the FTO is referenced herein), the Islamic State of Iraq and Syria, ad-Dawla al Islamiyya fi al-'Iraq wa'sh'Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. *Id.*
- On September 21, 2015, the Secretary of State added the following aliases to the FTO listing:  Islamic State, ISIL, and ISIS.  *See* 80 Fed. Reg. 58804 (September 30, 2014) [sic].

(Pl.'s Mot. Lim. 2, DN 191).  Ramic has not responded to this motion.

1

In relevant part, 44 U.S.C. § 1507 provides that "[t]he contents of the Federal Register shall be judicially noticed . . . ." 44 U.S.C. § 1507. Under Fed. R. Evid. 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it [] [] is generally known within the trial court's territorial jurisdiction . . . ." Fed. R. Evid. 201(b)(1). "Judicial notice is merely a substitute for the conventional method of taking evidence to establish facts." *Grand Opera Co. v. Twentieth Century-Fox Film Corp.*, 235 F.2d 303, 307 (7th Cir. 1956).

The Court will take judicial notice that ISIS has been designated as a foreign terrorist organization by the U.S. government as published in the Federal Register. *See United States v. Saipov*, No. 17-CR-722 (VSB), 2023 WL 4199415, at *8 (S.D.N.Y. June 27, 2023) (citing 44 U.S.C. § 1507) (taking judicial notice that the U.S. government has designated ISIS as a foreign terrorist organization). This motion is granted.

### B.   United States' Motion in Limine – Deposition of Witness 2 (DN 193)

The Court authorized the deposition of a witness pursuant to Fed. R. Crim. P. 15 for use at trial. (Mem. Op. & Order, DN 136). The deposition has since been taken in Bosnia and Herzegovina ("BiH"), and in the present motion the United States seeks rulings on the admissibility of the deposition testimony and certain objections asserted by both parties relating to testimony and deposition exhibits. (Pl.'s Mot. 4-32, DN 193).

### 1.   *Ramic's General Objection – Oath & Penalty of Perjury*

As a preliminary matter, Ramic initially objected to the deposition of Witness 2 because the deponent's oath was not valid under 22 U.S.C. § 4221 and the deponent was not subject to the penalties of perjury under 18 U.S.C. § 1621. (Def.'s Resp. Pl.'s Mot. Lim. 1-4, DN 204). Ramic

has since conceded Witness 2's oath was valid but maintains the second basis for his objection.[1] (Def.'s Sur-Reply Pl.'s Mot. Lim. 1-3, DN 235).

As courts have recognized, "[f]oreign deposition testimony, because of the absence of a sanction for perjury, is suspect." *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988); *see also United States v. Feijoo-Tomala*, 751 F. Supp. 40, 43 (E.D.N.Y. 1990) ("[T]he Court notes that foreign deposition testimony, such as the defendant desires to take of her nieces in Ecuador, is suspect because it lacks the sanction of perjury." (citing *Alvarez*, 837 F.2d at 1029)). Ramic, however, has not cited any authority to support the exclusion of the deposition testimony on this basis. During the deposition, Ramic had the opportunity to challenge Witness 2's credibility through cross-examination, and at trial Ramic may argue to the jury that it should disbelieve this witness's testimony. This objection is overruled.

### 2. *Ramic's Objection to Plaintiff's Exhibit No. 4*

During the deposition of Witness 2, the United States introduced Plaintiff's Exhibit No. 4 which it contends are three photographs of the deponent's father who is a member of ISIS and served with Ramic in the unit led by Ramo Pazara ("Pazara"). (Pl.'s Mot. Lim. 13, DN 193).

---

[1] In relevant part, 18 U.S.C. § 1621 provides that a witness commits the crime of perjury if:

> having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . .

18 U.S.C. § 1621(1).

Ramic objected to the relevancy of the exhibit.  (Witness 2 Dep. 24:18-19, DN 195-1; Pl.'s Mot. Lim. 13, DN 193).

The Federal Rules of Evidence have a liberal standard for relevancy.  *See Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006); *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006).  Evidence is "relevant" if it has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  A piece of evidence "does not need to carry a party's evidentiary burden to be relevant; it simply has to advance the ball."  *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009).  Generally speaking, all relevant evidence is admissible.  *See* Fed. R. Evid. 402.  Relevant evidence, however, may be excluded "if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  A court enjoys broad discretion when it decides questions of relevance and possible prejudice.  *See Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004).

As the United States notes, Witness 2 testified that his family joined his father in Syria, where his father was a member of group in which a majority of the group's members later joined ISIS.  (Witness 2 Dep. 17:4-18:6, DN 195-1).  The father made the whole family join ISIS— including Witness 2 who was fifteen years old at the time.  (Witness 2 Dep. 18:7-25).

Regarding Plaintiff's Exhibit No. 4, Witness 2 testified that his father is shown in three photos in this exhibit, and Witness 2 believed that the photos were taken on the second or third day of the ISIS attack in Kobane, Syria.  (Witness 2 Dep. 24:6-14, 25:3-10).  Witness 2 testified that Ramic served in the same unit as Witness 2's father during the attack on Kobane.  (Witness 2 Dep. 25:12-15).  The United States has met its low burden of establishing that these photos in this

exhibit are relevant to show that Ramic was a member of ISIS and participated in military engagements on ISIS's behalf.  Ramic's objection is overruled, and Plaintiff's Exhibit No. 4 is admissible at trial.

### 3.      *Ramic's Objection to Witness 2's Testimony as to Ramic's Name*

Ramic objected to Witness 2 referring to Ramic by the name "Abu Hazim" ("Hazim"). (Witness 2 Dep. 31:3-12).  Witness 2 testified, however, that he initially knew Ramic as Hazim but later learned his actual name is Ramic.  (Witness 2 Dep. 31:16-33:7).  Because there appears to be no evidentiary basis to exclude this testimony identifying Hazim and Ramic as being the same person, this objection is overruled.

### 4.      *Ramic's Objection to Witness 2's Testimony as to ISIS Documents Marked for Identification but Not Yet Admitted*

During the deposition, the United States marked Plaintiff's Exhibit No. 10, which purports to be an ISIS form entitled "General Border Administration Mujahid Information Form" containing information regarding Mirsad Ramish a/k/a Abu-Harzim al-Bosnawi.[2]  (Pl.'s Mot. Lim. 15, DN 193).  Similarly, the United States marked Exhibit No. 11, which purports to be ISIS form entitled "General Border Administration Mujahid Information Form" and listing information for alleged co-conspirator Khalaf Fahad Alkhalaf ("Alkhalaf").  (Pl.'s Mot. Lim. 16, DN 193).  The United States further marked Exhibit No. 12, which purports to be ISIS form entitled "General Border Administration Mujahid Information Form" and listing information for alleged co-

---

[2] Throughout this case, the name "Abu Hazim al-Bosnawi" is also used.  As Witness 2 testified:

> Q.      Does the same Abu Hazim al-Bosnawi, is that name familiar to you?
> A.      Abu Hazim, yes, the Bosnawi indicates that he's from Bosnia, that he's Bosnian.

(Witness 2 Dep. 82:1-4).

conspirator Abdulah Mohamed Alnwfal.  (Pl.'s Mot. Lim. 17, DN 193).  Ramic objected to these exhibits.  (Witness 2 Dep. 41:5-15, 47:16-23, 49:6-11; Pl.'s Mot. Lim. 15-17, DN 193).

By separate ruling, the Court has preliminarily granted the United States' Motion in Limine (DN 168) to admit ISIS documents relating to Ramic and co-conspirators.  (Mem. Op. & Order 7-12, DN 221).  Thus, this objection is overruled at this time but may be raised at trial.

### 5.   *Ramic's Objection to Plaintiff's Exhibit No. 14*

Ramic objected to Plaintiff's Exhibit No. 14, which is a photograph of a person Witness 2 identified as Hazim—i.e., Ramic.  (Witness 2 Dep. 53:11-4:2).  In the photo, Hazim is holding a Kalashnikov rifle.  (Witness 2 Dep. 54:3-6).  The United States asserts that the photo is relevant and admissible to the charges in this case.  (Pl.'s Mot. Lim. 17-18, DN 193).

As discussed above, there is a low standard for relevant evidence.  Under Fed. R. Evid. 402, relevant evidence is generally admissible.  This exhibit is relevant to the United States' theory that Ramic received military training in Syria, and Witness 2 testified about the contents of the photo—including his belief that the person in the photo is Hazim/Ramic.  Thus, this exhibit is admissible and relevant, and this objection is overruled.

### 6.   *Ramic's Objection to Plaintiff's Exhibit No. 17*

During Witness 2's deposition, Ramic objected to the introduction of Plaintiff's Exhibit No. 17 on the basis of speculation.  (Witness 2 Dep. 64:7-9).  The United States asserts that the photo depicts Ramic dressed in military clothing standing in front of a truck with an ISIS flag mounted to it.  (Pl.'s Mot. Lim. 19, DN 193).  The United States contends that this exhibit is relevant and should be admitted at trial.  (Pl.'s Mot. Lim. 19-20, DN 193).

Witness 2 testified that he recognized the truck as being the type of vehicle that ISIS used in battle and that the flag mounted on the vehicle was an ISIS flag.  (Witness 2 Dep. 66:18-20,

66:23-25). Witness 2 identified the person in the photo as Hazim, and in the background of the photo Witness 2 recognized a garage and another red vehicle that was used by a unit led by Pazara, which was the same unit in which Ramic and Witness 2 served.[3] (Witness 2 Dep. 25:12-15, 63:24-64:5, 67:6-12). Witness 2 testified that he believed the photo was taken several days before ISIS's attack on Kobane. (Witness 2 Dep. 64:11-12). This exhibit appears relevant because it relates to the United States' theory that Ramic was a member of ISIS and fought on behalf of ISIS in Kobane. Because this exhibit is admissible and Witness 2 professed to have knowledge of when the photo taken (which was a basis for the objection), the objection is overruled.

### 7. *Ramic's Objection to Witness 2's Testimony as to Ramic's Involvement in Battle of Kobane*

During Witness 2's deposition, the United States inquired if Witness 2 knew what Ramic and other ISIS members did during the Kobane offense. (Witness 2 Dep. 68:24-69:1, 69:11-18). Ramic objected on the basis that Witness 2 lacked personal knowledge about the fighters participating in the first wave of fighting and their actions because Witness 2 was not part of the first wave. (Witness 2 Dep. 69:22-70:3). Witness 2 testified, however, that he greeted Hazim before Hazim participated in the attack, and from a distance Witness 2 personally observed the first wave of the attack on Kobane. (Witness 2 Dep. 69:11-18, 70:5-12).

In relevant part, Fed. R. Evid. 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. As the Sixth Circuit has explained, "[t]he threshold for Rule 602 is low[,]" and "[t]estimony should not be excluded for lack of personal knowledge unless no reasonable juror

---

[3] Witness 2 also testified that his father served in Pazara's unit with them. (Witness 2 Dep. 24:6-25:15).

could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Smith*, 516 F. App'x 592, 595 (6th Cir. 2013) (second and third alterations in original) (quoting *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990)).

From Witness 2's testimony, it appears that he has personal knowledge relating to Hazim's participation in and personally observed the battle of Kobane. Ultimately, the jury, as the trier of fact, can determine what weight—if any—to give this evidence at trial or whether Witness 2's testimony is credible. Ramic's objection is overruled.

### 8.    *Ramic's Objection to Plaintiff's Exhibit No. 18*

Ramic objected to the introduction of Plaintiff's Exhibit No. 18, which is a video of the Kobane offensive from ISIS propaganda networks. (Witness 2 Dep. 72:11-17; Pl.'s Mot. Lim. 22, DN 193). The United States concedes that there was a lack of proper foundation to introduce this exhibit and agreed to make the necessary redactions to the deposition transcript and video relating to this exhibit. (Pl.'s Mot. Lim. 22, DN 193).

### 9.    *Ramic's Objection to Plaintiff's Exhibit No. 21*

Similarly, based on Ramic's objection, the United States agreed to withdraw its request to admit the photograph marked as Plaintiff's Exhibit No. 21. (Witness 2 Dep. 82:12-14; Pl.'s Mot. Lim. 22, DN 193). The United States has agreed to make the necessary redactions to the deposition transcript and video relating to this exhibit. (Pl.'s Mot. Lim. 22, DN 193).

### 10.    *Ramic's Objection to Plaintiff's Exhibit No. 22*

During the testimony, the United States showed Witness its Exhibit No. 22 to which Ramic objected. (Witness 2 Dep. 83:11). While in Raqqa, Syria, Witness 2 recalled being with Hazim and Hazim discussed a trip he took with another person (who the United States contends was co-conspirator Alkhalaf) to Mosul. (Witness 2 Dep. 80:10-81:9). During the trip, Hazim and his

companion were in an accident, and their vehicle flipped several times.  Hazim showed Witness 2 images of the damaged vehicle on Hazim's phone.  (Witness 2 Dep. 81:8-9).  Witness 2 testified that Plaintiff's Exhibit No. 22 was the same as the images Witness 2 observed on Hazim's phone. (Witness 2 Dep. 82:24-83:8).

Based on that testimony, Witness 2 has authenticated this exhibit.  In addition, the United States has met is low burden of showing that this exhibit is relevant to its theory of the case because the photo purportedly connects Ramic to a co-conspirator and is a confirmation of what Ramic told Witness 2 in Raqqa.[4]  Ramic's objection is overruled.

### 11.  *Ramic's Objection to Witness 2's Testimony as What Occurred After Ramic Left Their Shared Syrian Apartment*

During the deposition, the United States asked Witness 2 about what happened after Hazim left their shared apartment in Syria.  (Pl.'s Mot. Lim. 24, DN 193).  Ramic objected, and Witness 2 noted that he lacked any first-hand knowledge of this matter without answering the question. (Witness 2 Dep. 87:14-88:14; Pl.'s Mot. Lim. 24, DN 193).  While the United States considers the objection moot, it has agreed to make the necessary redactions to the deposition transcript and video.  (Pl.'s Mot. Lim. 24, DN 193).

### 12.  *Ramic's Objection to Plaintiff's Exhibit No. 26*

The United States also attempted to introduce a photo marked as Exhibit No. 26, to which Ramic objected.  (Witness 2 Dep. 88:16-89:6).  Witness 2 testified that the individual in the photo is the person he knew as Hazim, who he also knows as Ramic.  (Witness 2 Dep. 88:18-89:3).

---

[4] The United States contends that Alkhalaf helped pay for Ramic's travel to Syria, which is not apparent from Witness 2's testimony.  (Pl.'s Mot. Lim. 23, DN 193).  The United States therefore contends that Exhibit No. 22 connects Ramic to Alkhalaf.  (Pl.'s Mot. Lim. 23, DN 193).

This exhibit appears to be relevant to the United States' theory of the case and the United States' effort to prove that Ramic is also known as Hazim, and the United States has met its burden to establish relevancy.  This objection is overruled.

### 13.    *Ramic's Objection to Plaintiff's Exhibit No. 27*

Based on Ramic's objection, the United States agreed to withdraw its request to admit Plaintiff's Exhibit No. 27, which is purportedly a photograph of Ramic.  (Witness 2 Dep. 89:22; Pl.'s Mot. Lim. 26, DN 193).  The United States agrees to make the necessary redactions to the deposition transcript and video relating to this exhibit.  (Pl.'s Mot. Lim. 26, DN 193).

### 14.    *Ramic's Objection to Plaintiff's Exhibit No. 28*

Similarly, Ramic objected to Plaintiff's Exhibit No. 28, which is another alleged photograph of Ramic.  (Witness 2 Dep. 90:10; Pl.'s Mot. Lim. 26, DN 193).  The United States has agreed to withdraw its request to admit and to make necessary redactions to the deposition transcript and video relating to this exhibit.  (Pl.'s Mot. Lim. 26-27, DN 193).

### 15.    *Ramic's Objection to Plaintiff's Exhibit No. 29*

Plaintiff's Exhibit No. 29 is another photograph introduced during the deposition.  (Witness 2 Dep. 90:12-23).  Ramic objected to this exhibit.  (Witness 2 Dep. 90:24).

Witness 2 testified that he recognized Hazim as the person in the photograph.  (Witness 2 Dep. 90:15-21). Witness 2 also stated that:  (i) he served in ISIS with Hazim; (ii) Hazim is standing in front of a truck with a weapon in back in a prior photo; and (iii) Hazim is the same person Witness 2 previously identified in a photo as being dressed in military clothing, sitting with his legs crossed and holding a rifle.  (Witness 2 Dep. 91:1-14).

Like other photographs discussed above, the United States has met its burden to establish the relevance and admissibility of this exhibit.  Witness 2 identified the person in the photograph

as Hazim, and this photo was a person with whom Witness 2 served with in ISIS.  This objection is overruled.

### 16.   *United States' Objection to Ramic's Inquiry as to Witness 2's Ability to Travel to the United States*

During cross-examination, Ramic's counsel inquired about Witness 2's refusal to travel to the United States and whether the United States offered to pay Witness 2's travel expenses. (Witness 2 Dep. 108:18-109:6).  Witness 2 testified that he is currently incarcerated.  (Witness 2 Dep. 110:7-8).  The United States objected to this line of questioning.  (Witness 2 Dep. 109:14-16).

In Ramic's response, he did not directly address this objection or provide any clarity as to how this testimony would be admissible.  Because this line of questioning does not appear relevant to the issues in this case, the objection is sustained, and the related testimony and questions will be redacted from the deposition transcript and video.

### 17.   *United States' Objection to Question Regarding an FBI Agent Filing a False Report*

The United States seeks to exclude a line of questioning by Ramic's counsel relating to the veracity of an FBI agent's report.  (Pl.'s Mot. Lim. 28, DN 193 (citing Witness 2 Dep. 115:15-116:2)).  That report, from January 2017, states that Witness 2 informed investigators that he agreed to plead guilty in exchange for a two-year reduction in his sentence.  (Witness 2 Dep. 114:1-25).  Besides Witness 2 not recalling whether he met with U.S. investigators in January 2017, he denied or did not recall ever saying that he received a reduction in his sentence for pleading guilty to the charges in BiH.  (Witness 2 Dep. 115:6-14).  In response, Ramic's counsel asked Witness 2

if he thought that the FBI agent who authored the report filed a false report, and Witness 2 stated that he was making no such allegation.  (Witness 2 Dep. 115:15-116:2).

The United States contends that this questioning was inappropriate, irrelevant, and overly prejudicial.  (Pl.'s Mot. Lim. 28, DN 193).  There was nothing improper, however, in Ramic's counsel probing Witness 2's recollection of the meeting with investigators in January 2017 or the accuracy of the FBI agent's report summarizing that meeting.  It is certainly possible—as reflected by Witness 2's testimony—that he did not recall making that statement to the investigators.  In addition, to the extent that Ramic was challenging the credibility of Witness 2 based on his prior statements to investigators, credibility of a witness is always relevant at trial.  *See United States v. Vandetti*, 623 F.2d 1147, 1150 (6th Cir. 1980) ("Since the credibility of a witness is always relevant, evidence of bias or prejudice may be submitted as probative of that issue."  (internal citation omitted)).  While the United States argues that this testimony should be excluded under Fed. R. Evid. 403, this argument is unpersuasive.  The objection is overruled, and the motion is denied on this basis.

### 18. *United States' Objection to Ramic's Counsel Reading an FBI Agent's Report into the Record*

The United States objected and seeks to exclude a portion of the transcript and video in which Ramic's counsel asked Witness 2 about an FBI 302 report from Witness 2's January 2017 meeting with investigators.  (Pl.'s Mot. Lim. 28-29, DN 193).  The United States contends that FBI 302 report was improperly read into the record.

That argument is not consistent with the deposition transcript.  Counsel had the following exchange as to this objection:

> MR. TIEKE:  For the record, I just want to object to—you using a report of an agent being read into the record as if ·this is his statement.

> This is not his jinx.  Just for the record, I'd like to object for the record, but he's answering.
> . . .
> MR. WENDELSDORF:  And I agree with you, Chris, that in and of itself it is not evidentiary, but it is useful—or it can be used to impeach the credibility of the witness.
> I have asked him if it isn't true that he said these things on that date to the FBI agent.
> He is saying that either he doesn't recall or he did not say those things.· And I admit that we cannot use this to prove the truthfulness of it being asserted.
> I fully intend to call that agent as a witness at trial to testify as to what this witness told him, which I think will be clearly admissible.

(Witness 2 Dep. 117:7-13, 117:17-118:7).  Ramic is entitled to present a defense including challenging the credibility of Witness 2 and of the FBI agent who prepared the report.  There appears to be nothing inappropriate about the use of the FBI 302 report or the questioning of Witness 2 about the substance of the report.  Based on the Court's review of the deposition, this objection is overruled, and the motion is denied.

19. ***United States' Objection to Introduction & Reading of Defendant's Exhibit No. 12 into the Record***

Ramic introduced Defendant's Exhibit No. 12 during Witness 2's deposition.  (Witness 2 Dep. 110:19-23).  This exhibit is an investigative report from Bosnian authorities relating to the armed robbery for which Witness 2 was incarcerated at the time of the deposition.  (Witness 2 Dep. 111:10-23).  This exhibit was withdrawn, and the United States requests that any references to Defendant's Exhibit No. 12 in the deposition transcript and video should be redacted.  Because the parties are in agreement and testimony relating to this exhibit appears to be irrelevant, this objection is sustained and the United States' motion is granted as to Defendant's Exhibit No. 12.

20. ***United States' Objection to Ramic's Counsel Inquiring to Witness 2's Plea Agreement in Bosnia***

The United States objected to the ambiguity in Ramic's line of questioning as to whether Witness 2 was obligated to testify in this matter and cooperate with prosecutors due to a plea

agreement.  (Pl.'s Mot. Lim. 31, DN 193).  As the motion notes "[t]he United States objected asking defense counsel to make a distinction between Bosnian trials or in the United States."  (Pl.'s Mot. Lim. 31, DN 193 (citing Witness 2 Dep. 119:4-7)).

To the extent that the United States believed that Witness 2's testimony was unclear or that he was misled by counsel's questioning, the proper method of clarifying the record was through redirect examination of Witness 2, not the exclusion of the challenged testimony.  It is not proper to seek the exclusion of this testimony on the basis of relevance because the credibility of a witness is always relevant at trial, and the United States has not argued that this testimony should be excluded under Fed. R. Evid. 403.  *See Vandetti*, 623 F.2d at 1150.  The United States' objection is overruled, and its motion is denied on this basis.

### 21.  *Ramic's Objection to Plaintiff's Exhibit No. 30*

Lastly, the United States introduced Plaintiff's Exhibit No. 30, which a series of photographs of various individuals, and Ramic objected to the exhibit.  (Witness 2 Dep. 129:28-20).  Witness 2 testified that Bosnian authorities had shown him some of these photos when he was arrested in 2016, and Witness 2 placed his initials under the individuals he identified in the photographs.  (Witness 2 Dep. 128:8-129:16, 130:6-8).  Witness 2 specifically identified the person he knew as Hazim in the photos.  (Witness 2 Dep. 129:22-130:5).

As the United States notes in its motion, Ramic's cross-examination of Witness 2 probed the issue of whether Witness 2 first identified Hazim in a photo during an interview with the FBI's Joint Terrorist Task Force.  (Pl.'s Mot. Lim. 32, DN 193 (citation omitted); Witness 2 Dep. 98:1-8).  Witness 2 testified that he previously identified Hazim to Bosnian authorities.  (Witness 2 Dep. 98:1-8).  Thus, to the extent that Ramic intends to assert that U.S. authorities influenced Witness

2's identification of Ramic, the United States has shown that Witness 2's testimony is relevant. Ramic's objection is overruled on this basis.

### C.   United States' Motion for Leave to Seal (DN 194)

The United States moves in limine to seal the unredacted deposition transcript and video of Witness 2 pursuant to Fed. R. Crim. P. 15, which are Exhibits A and B to the United States' Motion in Limine (DN 193). (Pl.'s Mot. Leave Seal 1, DN 194). Because the unredacted version of these exhibits would publicly identify Witness 2 and place him at risk, this unopposed motion is granted.

### D.   Ramic's Motion in Limine – Plaintiff's Trial Exhibits (DN 218)

Ramic moves in limine to exclude five trial exhibits identified by the United States. (Def.'s Mot. Lim. 1, DN 218). The challenged are trial exhibits are Plaintiff's Trial Exhibits Nos. 42, 51, 58, 59, and 60. (Def.'s Mot. Lim. 1, DN 218).

According to the United States, Plaintiff's Trial Exhibit No. 42 consists of documents related to Ramic's travel in Yemen in 2010, including documents in Ramic's possession when he was denied entry to Yemen. (Pl.'s Combined Resp. Def.'s Mot. Lim. 2, DN 231). The United States represents that Plaintiff's Trial Exhibit No. 51 is Ramic's 2012 acceptance letter from a Saudi Arabian university. (Pl.'s Combined Resp. Def.'s Mot. Lim. 2, DN 231).

The United States has described Plaintiff's Trial Exhibits Nos. 58 and 59 as relating to sermons by Shaikh Abdullah Ibrahim Al-Faisal ("Faisal"). (Pl.'s Combined Resp. Def.'s Mot. Lim. 2, DN 231). The United States notes that Ramic frequented Faisal's chatroom and contends that these exhibits show Ramic's interest in jihad and his radicalization. (Pl.'s Combined Resp. Def.'s Mot. Lim. 2, DN 231). The United States anticipates calling OCE-1 and CHS 2, who both

15

participated in chats with Ramic, to testify about these matters.  (Pl.'s Combined Resp. Def.'s Mot. Lim. 2, DN 231).

The last challenged exhibit is Plaintiff's Trial Exhibit No. 60,[5] which the United States asserts is screen capture from the social media platform formerly known as Twitter, and the United States contends that this posting is from a user known "Abu Hazim Al Bosnawi."  (Pl.'s Combined Resp. Def.'s Mots. Lim. 2, DN 231).

These exhibits appear to be admissible and relevant as *res gestae*.  As the Sixth Circuit has explained:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense.  Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (citation omitted).  As described by the United States, these exhibits are background evidence to provide the jury with relevant explanatory information regarding why and how Ramic became involved with ISIS.  Whether the Court will ultimately permit this evidence to be admitted will be determined at trial.

Likewise, these exhibits do not appear to violate Fed. R. Evid. 404(b), which "is a rule of inclusion, not exclusion . . . ."  *United States v. Myers*, 102 F.3d 227, 234 (citing *United States v. Bakke*, 942 F.2d 977, 981 (6th Cir. 1991); *United States v. Vance*, 871 F.2d 572, 575 (6th Cir. 1989)).  Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove" that a person has a propensity to act in a certain manner; but under Rule 404(b)(2), such "evidence may

---

[5] In his reply, Ramic argues that this exhibit should be edited—assuming the Court deems the exhibit relevant—to remove the offensive comments and leave the remainder to show his membership in ISIS.  (Def.'s Reply Mot. Lim. 1, DN 234).  He asserts that the United States is seeking the introduction of this exhibit to improperly inflame the jury.

be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  Prior act evidence may be admissible Fed. R. Evid. 404(b)(2) if:  (1) there is sufficient evidence that the prior act occurred, (2) the proponent of the evidence offers it for a permissible purpose, and (3) the prejudicial effect of the evidence is not substantially outweighed by its probative value.  *See United States v. Joseph*, 270 F. App'x 399, 404 (6th Cir. 2008) (citation omitted); *United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir. 1992); *see also United States v. Sumlin*, 956 F.3d 879, 889 (6th Cir. 2020) ("Such probative proof includes 'intrinsic acts' evidence that relates to those acts that 'were necessary preliminaries to the crime charged.'  *United States v. Daulton*, 266 F. App'x 381, 384 (6th Cir. 2008) (citation omitted).  Furthermore, even if the evidence at issue relates to a defendant's uncharged criminal conduct, the evidence still is admissible if the conduct 'arises from the same events as' and 'is directly probative of [defendant's] charged offense[.]'" (alterations in original) (quoting *United States v. Clay*, 667 F.3d 689, 698 (6th Cir. 2012))).  Whether the requirements of Fed. R. Evid. 404(b) are satisfied must be determined at trial.

For these reasons, this motion is denied.

### E.    Ramic's Motion in Limine – Plaintiff's 404(b) Evidence (DN 219)

Ramic also moves in limine to exclude online chat communications between OCE-1 and Ramic purportedly using the usernames "Malik Al Muthana" or "Sunnah or Die" in 2011.  (Pl.'s Combined Resp. Def.'s Mots. Lim. 3, DN 231).  These chats were on a platform for a cleric known for advocating jihad, and the challenged chats occurred for approximately four months.  (Pl.'s Combined Resp. Def.'s Mots. Lim. 3, DN 231).

Like Ramic's motion seeking to exclude certain trial exhibits identified by the United States, this evidence is potentially admissible as *res gestae* and under Fed. R. Evid. 404(b)

depending on the proof presented at trial.  (Pl.'s Combined Resp. Def.'s Mots. Lim. 3-9, DN 231).

Thus, this motion will be denied at this time, and the admissibility of this evidence may be revisited

at trial.

### F.   Ramic's Motion to Dismiss (DN 223)

Ramic moves to dismiss all three counts of the Indictment to the extent that those charges

are based upon the allegation that he knew "that ISIS was a designated foreign terrorist

organization (as defined in Title 18, United States Code, Section 2339(g)(6)[)] . . . .  (Def.'s Mot.

Dismiss 1, DN 223; Indictment 1-3, DN 1).  As both parties recognize, no such statute exists, and

the United States clarifies that the proper citation is 18 U.S.C. § 2339B(g)(6).  (Def.'s Mot. Dismiss

1; Pl.'s Resp. Def.'s Mot. Dismiss 1, DN 227).  In his reply, Ramic acknowledges that even if his

motion were granted, there are still other ways the knowledge element can be proven by the United

States, and only one such way must be proven for a conviction under each count.  (Def.'s Reply

Mot. Dismiss 1-2, DN 233).

A defendant may move to dismiss based on a defect in the indictment if the indictment fails

to state an offense.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  When a court considers a motion to

dismiss, "[t]he indictment must be read as a whole, accepting the factual allegations as true, and

construing those allegations in a practical sense with all the necessary implications."  *United States

v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (citing *United States v. Reed*, 77 F.3d 139, 140 n.1

(6th Cir. 1996) (en banc)).  In addition, "[a]n indictment is to be construed liberally in favor of its

sufficiency."  *Id.* (citing *United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002)).

Fed. R. Crim. P. 7 provides, in relevant part, that an indictment "must be a plain, concise,

and definite written statement of the essential facts constituting the offense charged and must be

signed by an attorney for the government."  Fed. R. Crim. P. 7(c)(1).  Significant to the issue raised

in this motion, the rule also provides, that "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." Fed. R. Crim. P. 7(c)(2).  As a result, "[a]n error in citation . . . is not sufficient to render an indictment invalid." *United States v. Curry*, 723 F. App'x 314, 320 (6th Cir. 2018) (citing Fed. R. Crim. P. 7(c)(2))

Fed. R. Crim. P. 7(c)(2) does not save an indictment with a citation error, however, if the defendant was misled and prejudiced as a result of that error.  *See* Fed. R. Crim. P. 7(c)(2) *see also United States v. Groff*, 643 F.2d 396, 402 (6th Cir. 1981) ("The citation of an erroneous statutory provision is not fatal to the conviction, then, if the defendant knew the nature of the charges against him."  (citing *United States v. West*, 562 F.2d 375 (6th Cir. 1977); *Steinert v. U.S. Dist. Ct.*, 543 F.2d 69 (9th Cir. 1976); *United States v. Chestnut*, 533 F.2d 40 (2d Cir. 1976))).  The citation error here relates to the definition of a "designated foreign terrorist organization," and Ramic makes no argument that he was misled or prejudiced by the citation error.

Based on the Court's review, the Indictment is legally sufficient because it contains the elements of the crimes charged and fairly informs Ramic of those crimes charged in this case to allow him to present a defense.  *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  In addition, those crimes are sufficiently alleged to permit Ramic to assert an acquittal or conviction as a bar to a future prosecution for the same offenses.  *See id.* (citing *Hamling*, 418 U.S. at 117).  For these reasons, the motion to dismiss is denied.

### G.      United States' Motion in Limine (DN 224)

Finally, the United States moves in limine to exclude Ramic from presenting certain exhibits at trial.  (Pl.'s Mot. Lim. 1, DN 224).  In particular, United States objects to the following exhibits identified by Ramic:

> 1.      Any and all extradition requests by the United States to Turkey regarding defendant and all communications oertinent [sic] thereto.
> 2.      Official sealed refusal of Turkey to extradite defendant to the United States and translation thereof which was produced by the United States in discovery.  The United States retains the original document and provided the translation of same. See Exhibit A.
> . . .
> 5.      Documents pertaining to defendant's arrest on or about September 6, 2015, by Turkish authorities in Kilis, Turkey, and his prosecution for, conviction of, and sentencing in Kilis Agir Ceza Mahkemesi #1525/2015.

(Pl.'s Mot. Lim. 1, DN 224 (quoting Def.'s Ex. List 1-2, DN 206)).  As the United States explains in its motion, these exhibits appear irrelevant and inadmissible based on this Court's prior ruling that Ramic cannot raise the issue of illegal rendition at trial.  (Mem. Op. & Order 13, DN 221).  In his response, Ramic acknowledges the Court's prior ruling.  (Def.'s Resp. Pl.'s Mot. Lim. 1, DN 238).  Because these exhibits appear to be excluded based on the Court's prior ruling, this motion is granted.

### CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Plaintiff's Motion in Limine (DN 191) is **GRANTED**.

2.      Plaintiff's Motion in Limine (DN 193) is **GRANTED IN PART** and **DENIED IN PART**.

3.      Plaintiff's Motion for Leave to Seal (DN 194) is **GRANTED**, and DN 195 shall be sealed.

4.      Defendants' Motions in Limine (DN 218, 219) are **DENIED**.

5.　　Defendant's Motion to Dismiss (DN 223) is **DENIED**.

6.　　Plaintiff's Motion in Limine (DN 224) is **GRANTED**.

Greg N. Stivers, Chief Judge

United States District Court

May 31, 2024

cc:　　counsel of record